## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### CASE NO.:2:23-cv-00056

MARY MOORE AND GARY THOMAS JR.,

        *Plaintiffs*,

v.

SHERIFF JOHNNY BARNES, in his official
capacity as Sheriff of Washington County, North       Jury Trial Demanded
Carolina; JEFFREY AARON EDWARDS, in his
official and individual capacities; BRIAN
MIZELLE, in his official and individual
capacities; TOWN OF PLYMOUTH, an
incorporated municipality in the State of North
Carolina; CHIEF WILLIE WILLIAMS, in his
official capacity; KEVIN PHELPS, in his
individual capacity; RYAN WHITE, in his
individual capacity,

        *Defendants*.

_____/

**COMES NOW**, Plaintiffs Ms. Mary Moore ("Ms. Moore") and Mr. Gary Thomas Jr.

("Mr. Thomas") (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby

sue Sheriff Johnny Barnes, Jeffrey Aaron Edwards, Brian Mizelle, Town of Plymouth, Chief

Willie Williams, Kevin Phelps, and Ryan White, and allege as follows:

1

# INTRODUCTION

1. This is an action to recover compensatory and punitive damages as a result of the intentional misconduct, assault, battery, malicious prosecution, failure to intervene, and false imprisonment perpetrated by Defendants against Plaintiffs Mr. Thomas and Ms. Moore. Plaintiffs allege they experienced multiple violations of their rights as guaranteed by the U.S. and North Carolina Constitutions, as well as by federal and state law, when deputies of the Washington County Sheriff's Office used excessive force upon both Plaintiffs that included, but was not limited to, punching Ms. Moore in the face and kneeling on the neck of Mr. Thomas while he was handcuffed, causing him to lose consciousness. These same deputies knew that Mr. Thomas was unarmed, had committed no crime, and was lawfully exercising his right to operate a motor vehicle on a public roadway.

2. Upon information and belief, the actions of each Defendant, individually, and all of the Defendants, collectively, as described more fully below, deprived Plaintiffs of their civil rights and constitute egregious, malicious, corrupt, excessive, and objectively unreasonable use of force and improper police conduct that proximately caused Plaintiffs to endure excruciating pain, mental suffering, unjustified incarceration, and permanent injury.

3. Washington County Sheriff's Office ("WCSO") Deputy Jeffrey Aaron Edwards brutally assaulted an elderly Ms. Moore and a handcuffed Mr. Thomas on March 2, 2022.

4. WCSO Deputy Brian Mizelle and Plymouth Police Department ("PPD") officers Kevin Phelps and Ryan White could have and should have stopped Edwards's attack

that night. But in reality, WCSO should have intervened in Edwards's drug-fueled, martial arts-laden campaign of terror against Washington County's Black community long before March 2nd.

5. WCSO hired Edwards, despite having actual knowledge of his history of excessive force. At the very least, WCSO should have known Edwards's reputation for using excessive force while he was employed by the North Carolina State Highway Patrol.

6. Once WCSO made the mistake of hiring Edwards, WCSO had a duty to provide Edwards with training and guidance on the appropriate use of force. This training and guidance never occurred.

7. After hiring Edwards, WCSO received complaints and video evidence of Edwards using hand-to-hand combat tactics against non-threatening civilians. At the very least, WCSO had a duty to investigate each complaint and take disciplinary action against Edwards, up to and including termination. WCSO never took any corrective action against Edwards despite knowing of multiple incidents where he used unnecessary force.

8. WCSO failed to take even minimal steps to screen, train, or supervise Edwards. If it had done so, Edwards's March 2nd assault on Plaintiffs Ms. Moore and Mr. Thomas would not have happened.

9. WCSO did nothing to stop Edwards before he severely injured and traumatized Plaintiffs Ms. Moore and Mr. Thomas because it is WCSO's custom to tolerate excessive force.

10. PPD officers failed to intervene or otherwise stop Edwards on March 2nd because it is the PPD's practice to ignore, stand by, or even run away when WCSO deputies use excessive force.

11. Edwards may have been the primary person leg sweeping, body slamming, dragging, and punching Ms. Moore and Mr. Thomas on March 2nd, but he is far from the only one responsible for the harm they suffered.

12. It was clearly established in May 2020 that the actions taken by all of the Defendants were unlawful.

13. On May 25, 2020, in Minneapolis, a white police officer kneeled on the neck of a black man named George Floyd, who was already handcuffed, for as many as nine minutes. The officer kneeled on his neck as Floyd pleaded, "I can't breathe!" The officer knelt there until EMTs arrived and took Floyd, now unresponsive, away. Thankfully, a ten-minute video of the police killing went viral. By the end of the day, the four police officers who were at the scene, including the primary perpetrator, Derek Chauvin, had been fired. Prior to that incident, Derek Chauvin had nearly 20 complaints and two letters of reprimand filed against him.

14. Like Derek Chauvin before him, Defendant Deputy Edwards came to WCSO with several citizen complaints against him for law enforcement misconduct. Like Derek Chauvin, Edwards kneeled on Mr. Thomas's back. And like the four police officers who were at the scene for George Floyd, here Defendants Mizelle, Phelps, and White stood idly by and let it happen.

15. Fortunately, Mr. Thomas did not suffer the same fate as George Floyd, but the people of Washington County remain at risk until WCSO, PPD, and the involved officers are held accountable for their actions and inaction in the face of police brutality.

16. Ms. Moore and Mr. Thomas now bring this action under 42 U.S.C. § 1983 against Deputy Edwards and the law enforcement officers and agencies that facilitated this violence.

## PARTIES, JURISDICTION, AND VENUE

17. This cause of action arises in Washington County, North Carolina.

18. At all times relevant to this action, Plaintiff Ms. Moore is a resident of the State of North Carolina and resides in Plymouth, North Carolina. Ms. Moore is 57 years old and under no legal disability.

19. At all times relevant to this action, Plaintiff Mr. Thomas is a resident of the State of North Carolina and resides in Wake County, North Carolina. Mr. Thomas is 32 years old and is under no legal disability.

20. Defendant Sheriff Barnes is and was, at all times relevant hereto, the duly-elected Sheriff of Washington County, North Carolina, and is named as a defendant in his official capacity.

21. Defendant Sheriff Barnes has a responsibility to ensure that all law enforcement officers acting as employees and/or agents of his office comply with constitutional and statutory standards, including refraining from engaging in excessive force. Sheriff Barnes is further responsible for training and supervising WCSO with respect to its hiring of officers, training of officers, and treatment of civilians engaged with officers.

22. At all times relevant hereto, Sheriff Barnes was acting in the course and scope of his official duties as the Sheriff of Washington County and under the color of state law.

23. Upon information and belief, Sheriff Barnes is an adult citizen and resident of Washington County, North Carolina, and is under no legal disability.

24. Sheriff Barnes is responsible for establishing and maintaining adequate policies and procedures for use of force, intervening in use of force, and de-escalation; training and supervising deputies on use of force, intervening in use of force, and de-escalation; disciplining deputies who use excessive force; and properly screening candidates for employment.

25. At all relevant times, Defendant Sheriff Barnes acted under the color of state law. As the Sheriff, Defendant Barnes is the final policymaker on matters related to the care and custody of inmates at the county jail, including the care and custody of pretrial detainees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Consequently, Defendant Barnes, Defendants Jeffrey Aaron Edwards ("Defendant Edwards") and Brian Mizelle ("Defendant Mizelle"), may not avail themselves of a state law governmental immunity defense as to state law claims naming them in their individual capacities to the extent of coverage.

26. Defendant Edwards was at all times relevant to this Complaint working for WCSO as an employee or agent of WCSO, acting within the scope of his employment or agency with WCSO, and acting under the color of state law. Defendant Edwards is sued in his individual capacity with regard to any federal law claims naming him as Defendant. He is sued in his individual and official capacities with regard to any state

law claims naming him as Defendant. He is sued in his individual and official capacities for compensatory and punitive damages under both state and federal law.

27. Defendant Mizelle was at all times relevant to this Complaint working for WCSO as an employee or agent of WCSO, acting within the scope of his employment or agency with WCSO, and acting under the color of state law. Defendant Mizelle is sued in his individual capacity with regard to any federal law claims naming him as Defendant. He is sued in his individual and official capacities with regard to any state law claims naming him as Defendant. He is sued in his individual and official capacities for compensatory and punitive damages under both state and federal law.

28. Defendant Town of Plymouth ("Plymouth") is an incorporated municipality organized under the laws of the State of North Carolina. It is the responsibility of Plymouth to ensure that its law enforcement officers comply with constitutional and statutory standards, including intervening in the unconstitutional behavior of other law enforcement officers. Plymouth is responsible for training and supervising PPD with respect to its training of officers on intervening in use of force. Defendant Chief Willie Williams is, and was at all times relevant to this Complaint, the Chief of PPD.

29. At all times relevant hereto, Chief of PPD, Defendant Williams was responsible for establishing and maintaining adequate policies and procedures for intervening in use of force and de-escalation and training and supervising officers on intervening in use of force and de-escalation. He is sued in his official capacity for compensatory and punitive damages under both state and federal law.

30. Defendant Captain Kevin Phelps was at all times relevant to this Complaint working for PPD as an employee or agent of PPD, acting within the scope of his employment

or agency with PPD, and acting under the color of state law. He is sued in his individual capacity for compensatory and punitive damages under both state and federal law.

31. Defendant Sergeant Ryan White was at all times relevant to this Complaint working for PPD as an employee or agent of PPD, acting within the scope of his employment or agency with PPD, and acting under the color of state law. He is sued in his individual capacity for compensatory and punitive damages under both state and federal law.

32. Upon information and belief, Washington County, a government entity of North Carolina, is a "Participant" of the North Carolina Association of County Commissioners' ("NCACC") Risk Management Pools ("RMP"), which is incorporated under the laws of North Carolina and has its principal place of business in Raleigh, North Carolina, and provides insurance coverage for law enforcement wrongful acts and public officials wrongful acts, including acts of the duly elected Sheriff of Washington County and the employees and agents thereof.

33. Upon information and belief, Defendants Mizelle and Edwards are covered persons of the Participant, whose wrongful acts are covered by a law enforcement liability insurance policy.

34. Upon information and belief, Sheriff Barnes is a covered person of the Participant, whose wrongful acts of neglect and breach of duty, including misfeasance, and malfeasance, were taken while he acted within the scope of his professional duties.

35. Upon information and belief, subsequent to the March 2, 2022 encounter with Plaintiffs, Defendant Edwards and Mizelle's employment with the Washington County Sheriff's Office was terminated.

36. Upon information and belief, the reasons for Defendant Edwards's termination of employment from the Washington County Sheriff's Office stemmed from his unlawful use of force against Plaintiffs.

37. Upon information and belief, the reasons for Defendant Mizelle's termination of employment from the Washington County Sheriff's Office is due to conduct unbecoming of an officer.

38. At all times the actions and practices of the Defendants named herein and those acting in their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

39. Upon information and belief, to the extent that any and/or all of the Defendants in this action claim they are a municipal and/or governmental and/or County owned, operated and/or funded entity, or an employee and/or agent of any such entity, such Defendants do not have governmental immunity and/or sovereign immunity for any of the acts or omissions described herein. In the alternative, should any and/or all of the Defendants in this action have governmental immunity and/or sovereign immunity, upon information and belief, any and/or all such Defendants have waived any and all such governmental and/or sovereign immunity to which they may have been otherwise entitled, for themselves, their agents, employees and all officials acting in their official (and, if applicable, individual) capacities for civil liability and

tort by the act of purchasing (or otherwise procuring, obtaining and/or having in place) liability insurance (or the functional and substantive equivalent thereof, i.e., participation in a local governmental risk pool, purchase of a surety bond, etc.) prior to, concurrent with, and/or subsequent to and/or applicable to the acts and omissions alleged herein.

40. Upon information and belief, Washington County, a government entity of North Carolina, was and is a participant in a local governmental risk pool or the functional and substantive equivalent thereof, at all times applicable to the events that are the subject of this action and has purchased liability insurance coverage on behalf of Defendant Barnes, the duly-elected Sheriff of Washington County.

41. Upon information and belief, Defendant Sheriff Barnes purchased and maintains a surety bond through a company licensed, admitted, and authorized to do business in the State of North Carolina who serves as a surety for Defendant Sheriff Barnes pursuant to N.C. Gen. Stat. §§ 162-8 and 58-76-5, and by virtue of said surety bond has undertaken that in all things, the Sheriff would faithfully execute the office of Sheriff and perform all duties incumbent upon him by reason of his election to said office. Under North Carolina law, the Sheriff has waived governmental immunity by the purchase of his official bond.

42. Upon information and belief, the Defendants, their officers, directors, employees and agents have waived governmental immunity under state tort law, if any there be, by the purchase of insurance by Washington County, North Carolina, and/or the Sheriff of Washington County, insuring the Office of Sheriff of Washington County and any of their officers, agents and employees, including the Defendants named herein,

against liability for negligent or intentional damage to person or property, or against absolute liability to person or property caused by an act or omission of the Defendants or of any of their officers, agents or employees when acting within the scope of their authority and in the course of their employment.

43. Upon information and belief, Defendant Plymouth and any and all of its agents, employees, and officers waived any sovereign or governmental immunity that could have been raised to Plaintiffs' Complaint in that Plymouth had in force at all relevant times,

    a.   pursuant to N.C. Gen. Stat. § 160A-485,

         i.   Plans of insurance entered into, and/or

        ii.   Local government resolutions that waived immunity and established a funded reserve; and/or

    b.   participated in local government risk pool(s) pursuant to N.C. Gen. Stat. § 58-23.

44. Upon information and belief, on March 2, 2022, the Plymouth had an active insurance policy covering its employees against liability for wrongful acts caused by law enforcement.

45. Pursuant to N.C. Gen. Stat. §§ 153A-435 and 160A-485, the above-described insurance policies and/or surety policies act to waive state law governmental immunity for wrongful act liability.

46. In the alternative, if it is determined that Defendant Plymouth have not waived sovereign or governmental immunity or that any such waiver does not allow Plaintiffs

an adequate remedy at state law, then Plaintiffs assert a direct cause of action for violations of Plaintiffs' rights under the North Carolina Constitution.

47. Subject matter jurisdiction is, therefore, appropriate and proper and any and all such governmental immunity and sovereign immunity is and has been fully waived pursuant to N.C. Gen. Stat. § § 160A-485 and/or N.C. Gen. Stat. §153A-435.

48. This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief under 42 U.S.C. § § 1983 and 1988, as well as claims for relief under North Carolina state law.

49. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1343(a) in that this action is to redress depravation by the Defendants, under the color of state laws, of the rights of privileges and immunities granted to Plaintiffs by the United States Constitution and by federal statutes.

50. Jurisdiction is further proper in this Court pursuant to 28 U.S.C. § § 1331 and 1443.

51. This Court has pendant and/or supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

52. Venue is proper in this, the Eastern District of North Carolina, under 28 U.S.C. § 1391 in that one or more of the Defendants reside in Washington County, North Carolina, and a substantial part of the claims asserted herein arose in this District.

**ACTUAL AND/OR APPARENT AGENCY**

53. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

54. Upon information and belief, in the exercise of statutory powers granted by the North Carolina General Assembly, Defendant Plymouth funds, supports, and oversees the operation of PPD.

55. At all times relevant to this action, Sheriff Barnes served as the chief law enforcement officer for Washington County, North Carolina, as a duly-elected government official.

56. At all times relevant to this action, Chief Williams served as the chief law enforcement officer for Defendant Plymouth.

57. At all times relevant to this action, WCSO, acting on the authority of the duly-elected Sheriff, exercised jurisdiction throughout Washington County, including both the incorporated and the unincorporated areas, and provided law enforcement services for the unincorporated areas of Washington County.

58. At all times relevant to this action, PPD exercised jurisdiction throughout the Town, including both the incorporated and the unincorporated areas, and PPD provided law enforcement for the unincorporated areas of the Town of Plymouth.

59. Upon information and belief, Defendant Barnes, as the duly-elected Sheriff of Washington County, holds final policymaking authority with respect to the use of force by deputies employed by WCSO.

60. Defendant Barnes is sued both in his individual capacity as a policymaker, and under the doctrine of respondeat superior, for actions of WCSO deputies acting in the course and scope of their official duties.

61. The enforcement of laws of the State of North Carolina is an essential and well-recognized duty of all counties in the State of North Carolina. As such, at all relevant

times in this action, Defendant Barnes had a non-delegable duty to engage in law enforcement activities within its borders.

62. At times relevant to the allegations alleged in this Complaint, Defendants Edwards and Mizelle were employed by WCSO as law enforcement officers, and each was acting at all relevant times as an agent of WCSO and/or Defendant Sheriff Barnes within the course and scope of his duties as a sworn officer of the Washington County Sheriff's Office and/or law enforcement agent of Washington County.

63. In the alternative, Defendants Edwards and Mizelle's actions toward Plaintiffs alleged herein were malicious, corrupt, and outside the scope of their official duties as Sheriff's Deputies.

64. Defendant Sheriff Barnes had the right and/or power to direct and control the manner in which his employees and/or agents executed their official duties.

65. The acts, omissions and liability of all Defendants includes their agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, actual authority, apparent authority, actual agency, ostensible agency and/or respondeat superior and the acts and/or omissions of the above-named Defendants were a direct and proximate cause of the injuries, damages and losses sustained by the Plaintiffs.

**JOINT AND SEVERAL LIABILITY OF ALL DEFENDANTS**

66. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

67. The Defendants are jointly and severally liable to Plaintiffs for all damages alleged herein since their negligent or wrongful acts and omissions, singularly or in

combination, concurred or combined to produce, as a proximate cause, indivisible injuries to Plaintiffs.

## FACTUAL ALLEGATIONS

### Defendant Edwards Conducts an Out-of-Jurisdiction Stop, Search, and Arrest of Plaintiff Mr. Thomas in Martin County

68. On or around March 2, 2022, Plaintiff Mr. Thomas and his friend Caressil Goddard were driving a rental car on U.S. 64 in Martin County, North Carolina.

69. Defendant Edwards, then-Sheriff's Deputy of Washington County Sheriff's Office, was in Martin County, too. No law enforcement agency in Martin County had requested Defendant Edwards's help, and there was no reason for him to be outside of Washington County.

70. Upon information and belief, Martin County officials warned Defendant Edwards that he was not in Washington County and that he was outside his territorial jurisdiction.

71. Upon information and belief, Martin County did not request mutual assistance from Washington County on March 2, 2022.

72. Upon information and belief, no agency in Dardens, North Carolina, nor Martin County provided written request to Sheriff Johnny Barnes or Defendant Edwards for temporary assistance or mutual aid.

73. Defendant Edwards pulled over Plaintiff Mr. Thomas and his friend, Caressil Goddard, in Martin County, North Carolina, near Gospel Light Church in Jamesville.

74. Defendant Edwards asked Plaintiff Mr. Thomas for his driver's license and when Thomas informed him that he did not have it, Defendant Edwards instructed the Plaintiff to exit the car.

75. Defendant Edwards then handcuffed Mr. Thomas, walked him to his law enforcement vehicle, and placed him in the backseat.

76. Defendant Edwards then proceeded to search the interior and trunk of the car, without Thomas or Goddard's consent, as well as Ms. Goddard's purse.

77. After claiming that he found marijuana under the passenger seat in the car, Defendant Edwards informed Ms. Goddard that she was free to leave in the rental car.

78. Defendant Edwards then informed Mr. Thomas that he was no longer being detained and was instead being placed under arrest for marijuana possession and driving with a suspended license.

79. Defendant Edwards then transported Mr. Thomas out of Martin County, into Washington County, and to the Washington County courthouse in Plymouth, North Carolina.

80. After arriving in the courthouse parking lot, Defendant Edwards sat in the car with Mr. Thomas confined in the backseat until Defendant Mizelle arrived.

81. After Defendant Mizelle arrived, Defendant Edwards exited the car, got something out of his trunk, and handed Defendant Mizelle a bag.

82. Defendant Edwards opened the backseat door where Mr. Thomas was sitting.

83. Mr. Thomas asked Defendant Edwards what was happening. Defendant Edwards replied that they were going inside of the courthouse. When Mr. Thomas inquired whether a magistrate was present, Defendant Edwards grabbed his arm.

84. Mr. Thomas asked Defendant Edwards to loosen his handcuffs. Defendant Edwards told him he had to get out of the car before he could loosen the handcuffs.

**Defendant Edwards Brutally Assaults Mr. Thomas While He is Handcuffed and Not Resisting in the Courthouse Parking Lot. Defendant Mizelle Does Nothing.**

85. Mr. Thomas again asked where he was being taken and why. Defendant Edwards forcibly pulled him out of the car.

86. Instead of loosening Mr. Thomas's handcuffs, Defendant Edwards proceeded to push Mr. Thomas against the vehicle and search him, emptying his pockets and handing the contents to Defendant Mizelle to bag.

87. Mr. Thomas asked Defendant Edwards about the items being bagged when Defendant Edwards, without warning, forced Mr. Thomas to the ground by pushing him and knocking his legs out from underneath him.

88. Mr. Thomas was handcuffed and complying with Defendant Edwards when Edwards forced him to the ground.

89. When Mr. Thomas was on the ground, handcuffed and not moving, Defendant Edwards got on top of him, holding Mr. Thomas down with the force of his body weight. Defendant Mizelle stood by silently and watched.

90. Around this time, Mr. Thomas's mother, Francis Gilliam, and his aunt, Plaintiff Ms. Moore, arrived at the parking lot with Ms. Goddard to bail Mr. Thomas out of jail. When Ms. Moore saw Mr. Thomas was down on the ground, she got out of the car.

91. Defendant Edwards briefly got off of Mr. Thomas to approach Ms. Moore while Defendant Mizelle got on top of Mr. Thomas, who was lying face down on the ground, and used his own body weight to hold Mr. Thomas down.

92. Defendant Edwards then returned to Defendant Mizelle and Mr. Thomas, and together, they lifted him up and dragged him–while he was still on the ground–toward the entrance to the courthouse.

93. Defendant Edwards pulled Mr. Thomas up onto his feet before forcing him back to the ground again while Defendant Mizelle stood nearby.

94. On information and belief, Defendant Edwards then removed his body camera, opened the trunk of his vehicle, placed it inside, and closed the trunk.

95. Plaintiff Ms. Moore, Ms. Gilliam, and Ms. Goddard were horrified after witnessing Defendants Edwards and Mizelle dragging Mr. Thomas across the pavement while he remained handcuffed and was not resisting officers in any way.  The women began questioning Defendant Edwards's use of physical force on Mr. Thomas. The women were further concerned that Defendant Edwards appeared to be under the influence of drugs or some other substance.

96. Plaintiff Ms. Moore, Ms. Gilliam, and Ms. Goddard verbally objected to the assault and voiced their concerns that Mr. Thomas could suffer the same fate as George Floyd. They were truly in fear that Mr. Thomas would be seriously injured or killed.

97. Defendant Edwards then started dragging Mr. Thomas by his arm–while he was still lying on the ground–through the parking lot towards the entrance to the courthouse as Plaintiff Ms. Moore, Ms. Gilliam, and Ms. Goddard screamed in horror.



The screenshot above shows Defendant Edwards dragging Mr. Thomas across the parking lot.

**Defendant Edwards Assaults Ms. Moore for Verbally Objecting to and Trying to Document the Abuse of Mr. Thomas, Using Force Before Giving Her a Prior Warning. Defendant Mizelle Does Nothing.**

98. Plaintiff Ms. Moore had her phone in her hand and attempted to start recording a video. She told Defendant Edwards that she was recording, but she was so nervous, she was not sure if she had actually started the video.

99. When Ms. Moore began walking in the same direction that Defendant Edwards was dragging Mr. Thomas to record the assault and object to Defendant Edwards's treatment of Mr. Thomas, Defendant Edwards abandoned his assault of Mr. Thomas to assault Ms. Moore.

100.     Defendant Edwards let go of Mr. Thomas and, without warning or providing any prior instruction for compliance, punched Plaintiff Ms. Moore in the face with a closed fist, knocking her to the ground. Defendant Edwards struck Ms. Moore so hard that her mouth began to bleed.

101.     Defendant Mizelle stood by and watched as Defendant Edwards struck Ms. Moore. He said nothing and did nothing to stop him.

102.     Once Ms. Moore was on the ground, on her knees, Defendant Edwards continued pulling her around by her arm before slamming her forward onto the ground and kneeing her in the back, causing more pain.

103.     Ms. Moore cried out in pain while Ms. Gilliam, Ms. Goddard, and Plaintiff Mr. Thomas watched in horror. Mr. Thomas verbally objected to the physical assault on his aunt.

104.     During Defendant Edwards's violent takedown and continued assault of Ms. Moore once she was on the ground, Defendant Mizelle stood by and watched. He said nothing and did nothing to stop Defendant Edwards's actions.

105.    Defendant Edwards then aggressively handcuffed Ms. Moore before placing

her on the front steps of the courthouse, closing the handcuffs so tight that the skin on

her wrists were rubbed raw.

**Defendant Edwards Violently Drags a Handcuffed Mr. Thomas and Ms. Moore into the Courthouse. Defendant Mizelle and Plymouth Police Officer Defendants Either Assist or Fail to Intervene.**

106.    As Defendant Edwards assaulted Ms. Moore, Defendant Mizelle was nearby in

the parking lot, holding Mr. Thomas down on the ground where Defendant Edwards

had left him.

107.    Defendant Mizelle laid on top of Mr. Thomas–who was on his stomach–with

his knee on Mr. Thomas's back while he pulled upwards on his handcuffs, causing

pain to Mr. Thomas's wrists, arms, and shoulders. Defendant Mizelle was pressing

down on Mr. Thomas with the weight of his entire body.

108.    After handcuffing Ms. Moore, Defendant Edwards returned to Mr. Thomas,

and together with Defendant Mizelle, picked him up and walked Mr. Thomas through

the parking lot to the front steps of the county courthouse.

109.    Once at the top of the stairs, Defendant Mizelle let go of Mr. Thomas and

walked away to retrieve the bag of items the deputies had taken from Mr. Thomas,

while Defendant Edwards, who had been holding Mr. Thomas by his neck, threw

him, still handcuffed, down the steps toward the entrance.

110.    Defendant Edwards jumped down towards Mr. Thomas and forcefully kneed

him in the back and neck, causing Mr. Thomas's head to hit the brick exterior of the

building, causing severe pain.



The screenshots above show Defendant Edwards pushing Mr. Thomas down the stairs and driving a knee into his back as Mr. Thomas's head hits the exterior of the building.



The screenshot above shows Mr. Thomas laying unresponsive outside of the building after being thrown by Defendant Edwards.

111.     Defendant Edwards then dragged Mr. Thomas's limp body inside of the

building.



The screenshot above shows Defendant Edwards dragging Mr. Thomas into the building by the sleeve of his sweatshirt.

112.     Defendant Edwards then returned to the front steps where Ms. Moore was

sitting, yanked her off the step by her jacket, and grabbed her by her neck while he

took her inside. Defendant Mizelle stood by and watched.



The screenshots above show Defendant Edwards pulling Ms. Moore off of the steps by her jacket.



The screenshot above shows Defendant Edwards grabbing Ms. Moore by the neck while Defendant Mizelle watches from nearby. Mr. Thomas can be seen laying on the floor in the background.

113.    Mr. Thomas remained on the floor, face-down, inside of the building. After bringing Ms. Moore inside, Defendant Edwards rolled Mr. Thomas around and shook him until Mr. Thomas could be heard moaning in pain.

114.    Upon information and belief, two police officers from the Plymouth Police Department, Defendant Captain Kevin Phelps and Defendant Corporal Ryan White, arrived at the courthouse.

115.    As Defendants Phelps and White entered the building, Mr. Thomas's mother, Ms. Gilliam, asked them to call an ambulance for Mr. Thomas and begged them to help. She informed them that the deputies had just dragged Mr. Thomas into the building. Upon information and belief, Defendant White was further informed that Defendant Edwards should be drug tested because he appeared to be under the influence of a substance and appeared to have a blank look on his face.

116.    Upon information and belief, Defendant White stated that he did not know what was going on and followed Defendants Edwards and Mizelle into the building, and Defendant Phelps similarly said he did not know what was going on. Ms. Gillam told Defendants White and Phelps that Mr. Thomas was not okay.

117.    Defendant Edwards then dragged Mr. Thomas by the arm and shoulder into the elevator and laid him on his back.

118.    Defendant Phelps followed them into the elevator while Defendant Edwards held Mr. Thomas by one of his legs. Defendant Phelps did not try to get between Defendant Edwards or stop him from taking Mr. Thomas into the elevator.

119.    Upon information and belief, Defendant Phelps knew Defendant Edwards's use of force was excessive and unnecessary.

120.    Defendant Edwards then grabbed Mr. Thomas's other leg and kneeled on both of his legs. Defendant Mizelle, after watching Defendant Edwards drag Mr. Thomas onto the elevator, walked Ms. Moore into the elevator. Defendant Phelps followed.

121.     Ms. Moore was terrified to go upstairs with Defendant Edwards.

122.     Defendant Edwards continued to kneel on Mr. Thomas's legs for the duration of the elevator ride while Mr. Thomas asked Defendant Phelps to loosen his handcuffs and told Phelps he was just "slammed in the head" and was scared. Mr. Thomas was truly in fear for his life and what Defendant Edwards would do next.

123.     Once the elevator reached the third floor, where the jail is located, Defendant Mizelle walked Ms. Moore out of the elevator.

124.     While Defendant Phelps was trying to see if Mr. Thomas could stand up and walk out of the elevator on his own, Defendant Edwards said Mr. Thomas was not going to stand up, grabbed Mr. Thomas by the leg, and dragged him out of the elevator. Defendant Edwards left Mr. Thomas laying on the floor on his stomach outside of the jail entrance. No other law enforcement officer on site intervened.

125.     Minutes later, Defendants Edwards and Phelps asked Mr. Thomas to stand up. After a handcuffed Mr. Thomas managed to stand up, Defendant Edwards grabbed him by the shoulder and leg-swept him from the back, forcefully pulling him down to the floor again. Defendant Edwards had not given Mr. Thomas any order to remain on the ground or a warning before he executed the takedown.

126.     Upon information and belief, body camera footage shows Defendant Edwards's unlawful use of force on Mr. Thomas.

127.     Defendant Mizelle watched as Defendant Edwards leg-swept Mr. Thomas. He did nothing and said nothing to stop Defendant Edwards.

128.     Meanwhile on the third floor, Ms. Moore repeatedly asked for medical attention and said that her head hurt. Defendants Edwards and Mizelle did not seek medical attention for Mr. Thomas or Ms. Moore.

129.     Defendant Phelps also saw Defendant Edwards leg sweep Mr. Thomas. He also did nothing. Upon information and belief, Defendant Phelps said "whoa whoa whoa" and "calm down," but did not get between Defendant Edwards and Mr. Thomas or try to get Defendant Edwards to leave the area.

130.     Defendant White also witnessed Defendant Edwards leg sweep Mr. Thomas. He did nothing and said nothing.

131.     Rather than stop Defendant Edwards from continuing his brutal attacks, Defendant Phelps and Defendant White decided to leave. They got on the elevator and left Mr. Thomas and Ms. Moore with Defendant Edwards.

132.     Upon information and belief, on their way out of the courthouse, Defendant Phelps said he was "stepping out" and that he wanted "no part of this."

133.     Before departing the courthouse, Defendant Phelps called the EMTs to check on Mr. Thomas and Ms. Moore.

134.     On information and belief, Defendant Phelps called Defendant Edwards's supervisor at WCSO, Chief Deputy Arlo Norman, to complain about Defendant Edwards's use of force, but Norman did not answer his calls.

135.     On information and belief, Defendant Phelps called Defendant Williams, Chief of PPD, to complain about Defendant Edwards's use of force and was told by Defendant Williams to immediately leave the scene. Defendants Phelps and White left the courthouse as instructed.

**Ms. Moore and Mr. Thomas Receive Medical Treatment. The Charges Defendant Edwards Pressed Against Them Are Dropped.**

136.　　On information and belief, jail staff refused to let Defendant Edwards place Ms. Moore and Mr. Thomas in a holding cell because they did not have paperwork from the magistrate judge.

137.　　On information and belief,  jail staff would not accept Ms. Moore without a medical clearance due to her visible injuries, including a bloody mouth and marks on her arms and legs.

138.　　On information and belief, jail staff observed bruises on Ms. Moore's face and Mr. Thomas's body.

139.　　On information and belief, jail staff were aware that Ms. Moore had been punched in the face and that Mr. Thomas had been slammed head-first into a brick wall and was scared for his life.

140.　　Mr. Thomas informed EMTs that he had been thrown on the ground outside and he was experiencing pain all over his body. He also told EMTs that his handcuffs were too tight and his arm was hurting.

141.　　On information and belief, EMTs observed a ring of blood around Ms. Moore's mouth and a swollen lip. Ms. Moore told the EMTs that she had been hit.

142.　　On information and belief, the next morning, Defendant Edwards texted WCSO Sergeant James Patterson and characterized his assault on a handcuffed Mr. Thomas and an elderly, disabled Ms. Moore as a fight.

143.　　Mr. Thomas and Ms. Moore were released from WCSO custody after they made bail. However, they were told to return to court later that morning. Mr. Thomas

and Ms. Moore went to the hospital before returning to the courthouse. When they arrived, they were told they did not have court that day, so they returned to the hospital.

144.     Mr. Thomas was treated at the hospital for dizziness, blurred vision, and headaches, among other injuries.

145.     Mr. Thomas moved away from Plymouth after his traumatic encounter with Defendants Edwards, Mizelle, Phelps, and White, fearing harassment and further mistreatment from law enforcement in the area. In particular, Mr. Thomas was traumatized from seeing Ms. Moore get assaulted by Defendant Edwards.

146.     At the hospital, Ms. Moore received treatment for a busted lip, injured thumb, and cuts on her wrists where she was handcuffed, among other injuries.



The image above shows the injury to Ms. Moore's lip caused by Defendant Edwards's punch.

147.    Ms. Moore experienced extreme pain in her thumb as a result of the assault and sought medical treatment in the days after the incident. On or around March 17, 2022 she met with a specialist who confirmed that her thumb was broken and placed it in a splint. Ms. Moore went to physical therapy for her thumb in the months following the incident.



The above image shows Ms. Moore's thumb in a splint following the injury caused by Defendant Edwards's use of force.

148.     Ms. Moore continues to suffer from limited movement of her thumb. Simple tasks that she was able to do with ease before the incident (e.g., open a bag of chips, write a note, twist off a cap, etc.) are now difficult and painful. Ms. Moore had to re-learn how to hold pens and pencils and now must take breaks when writing letters.

149.     Ms. Moore continues to suffer from anxiety, fear for her life, mental anguish, insomnia, and a fear of law enforcement. In an effort to avoid possible interactions with law enforcement and any further mistreatment, Ms. Moore rarely leaves her home. She has a fear of officers from WCSO and PPD because of their treatment of her and Mr. Thomas, and she is afraid of seeing Defendant Edwards.

150.    Ms. Moore no longer feels she can trust people. She easily gets upset and experiences mood swings–which she never experienced before the incident with Defendants Edwards, Mizelle, Phelps, and White.

151.    Ms. Moore sought counseling after the traumatic encounter with Defendants Edwards, Mizelle, Phelps, and White.

152.    After the incident, Ms. Goddard released cell phone camera footage she had taken during the incident to the local news, and the incident soon garnered national media attention.[1]

153.    On March 10, 2022, the Washington County Sheriff's Office announced in a Facebook post that Defendant Edwards had been fired following an internal investigation.[2] Defendant Edwards had been terminated on March 8, 2022 after being placed on paid administrative leave on March 4, 2022.

154.    Approximately one week after Defendant Edwards was terminated, the District Attorney's office dismissed all criminal charges against Mr. Thomas and Ms. Moore related to the incident "in the interests of justice."[3]

---

[1] *See, e.g.*, Maddie Kerth, *Family calls for excessive force investigation on Washington County Sheriff's deputy*, WITN (Mar. 3, 2022)**,** https://www.witn.com/2022/03/04/family-calls-for-excessive-force-investigation-washington-county- sheriffs-deputy/; AP, *North Carolina Deputy Fired After Putting Knee On Black Man's Neck*, Huffington Post (Mar. 12, 2022), https://www.huffpost.com/entry/deputy-fired-excessive-force_n_622c62e1e4b0317d0a31364f; Nyamekye Daniels, *'This isn't Going to Be No George Floyd': North Carolina to consider criminal charges against deputy caught on video with knee on man's neck*, Yahoo News (Mar. 18, 2022), https://www.yahoo.com/video/isn-t-going-no-george-123000905.html.
[2] Washington County NC Sheriffs Office, Facebook (Mar. 10, 2022), https://www.facebook.com/permalink.php?story_fbid=271306248506277&id=100068807126360&ref=embed_post ("As a result of the Sheriff's Office Internal Investigation, and after reviewing all body camera and security footage along with interviews of those involved. The Sheriff's Office has terminated the Deputy involved."); *see also* WITN Web Team, *Washington County deputy seen in arrest video fired; SBI now investigating*, WITN (Mar. 11, 2022), https://www.witn.com/2022/03/11/washington-county-deputy-seen-arrest-video-fired-sbi-now-investigating/.
[3] Press Release, Second Prosecutorial District,District Attorney Seth H. Edwards, dated September 30, 2022.

155.     On September 30, 2022, District Attorney Seth Edwards announced that his office would not be filing criminal charges against Defendant Edwards.[4]

156.     On information and belief, Defendant Edwards has not been decertified and continues to work as a law enforcement officer in North Carolina.

157.     On information and belief, Defendant Mizelle was never disciplined nor reprimanded by WCSO for his use of force on Mr. Thomas or his failure to intervene in Defendant Edwards's use of force on Mr. Thomas and Ms. Moore.

158.     On information and belief, Defendants Phelps and White were never disciplined nor reprimanded by PPD for their failure to intervene in Defendant Edwards's use of force on Mr. Thomas.

### Defendants Edwards and Mizelle's Use of Force

159.     The use of force by a law enforcement officer is unreasonable if there is no need for force. Even in the limited circumstances under which force is permitted, it cannot exceed a level of force equal to the individual's level of resistance.

160.     Law enforcement officers have an obligation to stop using force after an individual has been brought into compliance or the situation is under control.

161.     If an individual is being restrained on the ground, law enforcement officers should position them in a manner that will assist breathing and minimize respiratory issues, such as placing them on their side. Officers should avoid putting pressure on the individual's chest, neck, or head.

---

[4] *Id.*; *see also* WITN Web Team, *No charges for Washington County deputy fired in excessive force case*, WECT (Sept. 30, 2022), https://www.wect.com/2022/09/30/no-charges-washington-county-deputy-fired-excessive-force-case/; Merit Morgan, *Mom speaks after no charges filed against deputy accused of excessive force on her son*, WITN (Oct. 4, 2022), https://www.witn.com/2022/10/05/mom-speaks-after-no-charges-filed-against-deputy-accused-excessive-force-her-son/.

162.     Individuals should not be placed in the prone position (i.e., face down) because of the significant risk of asphyxia. Applying weight to an individual's back results in additional compression that can increase difficulty breathing.

163.     A "leg sweep" or "sweep" is a martial arts technique used by law enforcement officers to throw an individual down to the ground by taking their legs out from under them, causing them to fall.[5] Leg sweeps happen quickly, making it difficult for an individual to comply with a verbal command before the maneuver is used.[6] Leg sweeps can be "devastating" and may cause an individual to fall backward or forward onto a hard surface (e.g., concrete, gravel, tile, etc.).[7] Leg sweeps can result in serious head injuries and even death and, as such, some law enforcement training programs do not teach the maneuver and some law enforcement agencies do not authorize their use.[8]

164.     Physical force should not be used on an individual in restraints. In the rare case where force is objectively reasonable to prevent an individual's escape or imminent bodily injury to the individual, the law enforcement officer, or another person, only the minimal amount of force necessary to control the situation should be used.

165.     Once a situation has been controlled, law enforcement officers should provide appropriate medical care consistent with their training, such as providing first aid, or

---

[5] Kirk W. Bonsal Jr., *Police defensive tactics: Rethinking the leg sweep*, Police1 (Aug. 3, 2016), https://www.police1.com/police-products/training/gear/articles/police-defensive-tactics-rethinking-the-leg-sweep-HYBVo50XDjXMCEIa/.
[6] *Id.*
[7] *Id.*
[8] *Id.*

request medical attention, such as calling emergency medical services and arranging for transportation to a hospital.

166.    The actions of Defendants Mizelle and Edwards described herein were undertaken while they were working within the course and scope of their official duties to directly provide law enforcement services.

**Excessive Force as to Mr. Thomas**

167.    Defendant Edwards used excessive force against a handcuffed Mr. Thomas at multiple points on March 2, 2022–including extended applications of unnecessary force in each of the following particulars:

    a.  Defendant Edwards used unnecessary force when he extracted a handcuffed Mr. Thomas from his patrol vehicle and threw him against the vehicle;

    b.  Defendant Edwards used unnecessary force when he slammed a handcuffed Mr. Thomas face-down on the ground;

    c.  Defendant Edwards used unnecessary force when he laid on top of Mr. Thomas while Mr. Thomas was handcuffed and face-down on the ground;

    d.  Defendant Edwards used excessive force when he dragged a handcuffed Mr. Thomas across the parking lot with Defendant Mizelle's assistance;

    e.  Defendant Edwards used excessive force when he forced a handcuffed Mr. Thomas back down on the ground after standing him up;

    f.  Defendant Edwards used excessive force when he dragged a handcuffed Mr. Thomas across the parking lot again;

    g.  Defendant Edwards used excessive force when he pushed a handcuffed Mr. Thomas down the stairs;

    h.  Defendant Edwards used excessive force when he kneed a handcuffed Mr. Thomas in the back, causing Mr. Thomas to hit his head on the brick wall of the courthouse;

i.   Defendant Edwards used excessive force when he dragged a handcuffed Mr. Thomas inside of the building and into the elevator;

j.   Defendant Edwards used excessive force when he kneeled on Mr. Thomas's legs during the elevator ride while Mr. Thomas remained handcuffed;

k.   Defendant Edwards used excessive force when he dragged a handcuffed Mr. Thomas by his leg out of the elevator;

l.   Defendant Edwards used excessive force when he leg-swept a handcuffed Mr. Thomas when Mr. Thomas stood up (forcing him back down on the floor).

168.   Defendant Edwards caused Mr. Thomas bodily injury as a result of his actions.

169.   Defendant Edwards caused Mr. Thomas to sustain a personal injury due to Edwards's false arrest, false imprisonment, malicious prosecution, assault, and battery on Plaintiff.

170.   The actions of Defendant Edwards constitute a law enforcement wrongful act.

171.   The assault and battery by Defendant Edwards on Plaintiff Mr. Thomas amounts to excessive force that does not arise, directly or indirectly, out of a series of continuous, repeated, or interrelated acts. Instead, his actions are a single cause or series of related causes separate and apart from the acts of the other Defendants.

172.   Defendant Mizelle used unnecessary force against a handcuffed Mr. Thomas on March 2, 2022 in each of the following particulars:

a.   Defendant Mizelle used excessive force when he held a handcuffed, non-resisting Mr. Thomas on the ground;

b.   Defendant Mizelle used excessive force when he assisted Defendant Edwards in dragging a handcuffed Mr. Thomas across the parking lot;

c.   Defendant Mizelle used excessive force against a handcuffed Mr. Thomas when he laid on top of him while he was on his stomach and pressed his knee into Mr. Thomas's back while pulling up on his handcuffs.

173.     Defendant Mizelle caused Mr. Thomas bodily injury as a result of his actions.

174.     Defendant Mizelle caused Mr. Thomas to sustain a personal injury due to Mizelle's false arrest, false imprisonment, malicious prosecution, assault, and battery on Plaintiff.

175.     The actions of Defendant Mizelle constitute a law enforcement wrongful act.

176.     The assault and battery by Defendant Mizelle on Plaintiff Mr. Thomas amounts to excessive force that does not arise, directly or indirectly, out of a series of continuous, repeated, or interrelated acts. Instead, his actions are a single cause or series of related causes separate and apart from the acts of the other Defendants.

**Excessive Force as to Ms. Moore**

177.     Defendant Edwards used unnecessary force against Ms. Moore on March 2, 2022:

     i.     Defendant Edwards used excessive force when he punched an unarmed, non-threatening, and non-resisting Ms. Moore in the face with a closed fist, knocking her to the ground;

    ii.     Defendant Edwards used excessive force when he grabbed Ms. Moore by the arm and threw her to the ground;

   iii.     Defendant Edwards used excessive force when he flung Ms. Moore around by her arm, slammed her to the ground, kneed her in the back, and forcefully handcuffed her;

    iv.     Defendant Edwards used unnecessary force when he grabbed a handcuffed Ms. Moore by the neck and pulled her into the courthouse.

178.     Defendant Edwards caused Ms. Moore bodily injury as a result of his actions.

179.     Defendant Edwards caused Ms. Moore to sustain a personal injury due to Edwards's false arrest, false imprisonment, malicious prosecution, assault, and battery on Plaintiff.

180. The assault and battery by Defendant Edwards on Plaintiff Ms. Moore amounts to excessive force that does not arise, directly or indirectly, out of a series of continuous, repeated, or interrelated acts. Instead, his actions are a single cause or series of related causes separate and apart from the acts of other Defendants.

### *WCSO's Policy and Practice of Excessive Force*

181. WCSO has a history of using excessive force against suspects and bystanders in the course of executing arrests and detentions, including:

   a. failing to de-escalate situations;

   b. using hard hand techniques and electronic control devices against individuals who are not actively resisting; and

   c. using uncontrolled takedowns and holds on individuals who pose no threat of safety to themselves, officers, or others.

182. For example, WCSO Deputy Dominic Franks went viral in 2020 after a video was circulated on Facebook showing him violently throwing Jay Castaneda, a civilian with an injured back, down on the ground before arresting him for simply walking down the road.[9] WCSO cleared Deputy Franks of any wrongdoing.[10]

183. On information and belief, WCSO deputies tased Andre Spencer even though he was not resisting on September 4, 2021, during an arrest for providing a fake identification document.

---

[9] Amber Lake, *SHERIFF: No wrongdoing by deputy in arrest of Washington County man,* WITN (Aug. 21, 2020), https://www.witn.com/2020/08/12/internal-investigation-underway-at-washington-county-sheriffs-office/.
[10] *Id.*

184.     On information and belief, Defendant Edwards had a reputation in Plymouth, North Carolina and Washington County for using excessive force.

185.     On information and belief, Defendant Edwards used disproportionate or unnecessary force against individuals he was attempting to arrest or detain several times during his employment at WCSO.

186.     On information and belief, Defendant Edwards placed Edward Lee Sanders (aka Chocolate) in a headlock, kneed him in the chest, and tased him on or around February 2021, when Mr. Sanders did not immediately comply with a command to put his hands on the hood of Edwards's vehicle after he was stopped for riding an ATV on private property. Defendant Edwards tased Mr. Sanders even though Mr. Sanders posed no threat to himself, Edwards, or anyone else.

187.     On information and belief, the court dismissed all charges against Mr. Sanders related to the incident.

188.     On information and belief, a video of the incident was widely circulated both in the community and amongst law enforcement in Plymouth, North Carolina.

189.     On information and belief, Mr. Sanders's partner, Semiko Bennett, filed multiple complaints with WCSO regarding the incident, including submitting a letter detailing her concerns.

190.     On information and belief, at WCSO Chief Deputy Arlo Norman's direction, Ms. Bennett also texted him a video of the incident. Chief Deputy Norman replied that he could not use the video in any internal investigation because Defendant Edwards did not know he was being filmed.

191.    On information and belief, Defendant Edwards received no coaching, discipline, or other corrective action for using unnecessary force against Mr. Sanders.

192.    On information and belief, in or around June 2021, Defendant Edwards repeatedly struck Derrick Allen in the head during an arrest after he was handcuffed, lying prone on the ground, and fully complying with Edwards's commands.

193.    On information and belief, Mr. Allen's face was visibly bruised and his arm and head were swollen but he did not receive medical treatment for his injuries.

194.    Another deputy observed Defendant Edwards bleeding from the hand. It was later determined that Edwards fractured his hand during the incident.

195.    On information and belief, Mr. Allen reported the incident to Defendant Sheriff Barnes who told him to make an excessive force complaint. Mr. Allen attempted to make a complaint to the District Attorney's office but District Attorney Seth Edwards declined to investigate it.

196.    On information and belief, on or around April 2021, Defendant Edwards used excessive force on a man named Torey Hudson who he had arrested outside of the Bojangles restaurant in Plymouth, North Carolina.

197.    On information and belief, after Mr. Hudson saw Defendant Edwards in the drive-thru staring at him, Mr. Hudson made a joke at Defendant Edwards's expense. Defendant Edwards then pulled Mr. Hudson out of his car, slammed him against the side of the car, emptied his pockets, put him in handcuffs, and roughly put him in his patrol vehicle before taking him to jail.

198.     On information and belief, Defendant Edwards elbowed Mr. Hudson while he was in the elevator in the courthouse and slung him onto the floor of the holding cell while he was removing his handcuffs.

199.     On information and belief, Mr. Hudson complained to Defendant Barnes about Defendant Edwards and other deputies at WCSO but Defendant Barnes did not act on the complaints.

200.     On information and belief, Defendant Edwards beat a man named Kyle Ross Barton in Roper, North Carolina prior to March 2022.

***WCSO's Failure to Supervise or Discipline Defendant Edwards and Other Deputies Engaged in Misconduct***

201.     On information and belief, there were complaints of similar misconduct against Defendant Edwards while he was employed by WCSO but WCSO ignored these past complaints.

202.     On information and belief, Ms. Bennett reported Defendant Edwards's use of excessive force to WCSO on February 9, 2022.

203.     WCSO at least had constructive knowledge of Defendant Edwards's unnecessary force against Edward Lee Sanders as the video was widely disseminated on social media.

204.     On information and belief, the video of Defendant Edwards's use of force against Mr. Sanders was so widely circulated that it was reviewed by a number of PPD officers, including Defendant Phelps.

205.     On information and belief, Defendant Phelps knew that Defendant Edwards's use of force against Mr. Sanders was excessive and unjustified.

206.     On information and belief, Ms. Bennett submitted a second complaint to WCSO after Defendant Edwards conducted an unlawful, out-of-jurisdiction stop and detention of Mr. Sanders in Martin County.

207.     On information and belief, no action was taken on Ms. Bennett's second complaint.

208.     On information and belief, Defendant Barnes received written complaints about Defendant Edwards's behavior from multiple members of the community prior to his assault on Plaintiffs.

209.     Members of the community also posted on social media about issues they had with Defendant Edwards prior to his assault on Plaintiffs.[11]

210.     WCSO has a history of failing to supervise and discipline deputies for excessive force and other misconduct.

---

[11] See, e.g., Terri Pitt, Facebook Live (Mar. 15, 2022), (discussing Defendant Edwards' assault on Mr. Thomas, Pitt says, "This ain't the first time you acted up. You do our Black people like this all the time and think you can get away with it."); Kyle Ross Barton, Facebook (Mar. 2022), (in response to Janel Boyd sharing WITN's article about Defendant Edwards assault on Mr. Thomas, Barton posted, "This the same cop that beat me in [R]oper"); Jay Castaneda, Facebook (Mar. 2022), (Castaneda posted screenshots from the video shared by WITN depicting Defendant Edwards kneeing Mr. Thomas and dragging him inside, writing, "[T]his the same sheriff who been harassing me"); Jay Castaneda, Facebook (Mar. 2022), (in response to Janel Boyd sharing WITN's article about Defendant Edwards assault on Mr. Thomas, Castaneda posted, "Same mf who keep harassing me"); Jay Castaneda, Facebook (Mar. 5, 2022), (in response to a post by Semiko Bennett about Defendant Edwards assaulting Mr. Thomas, Castaneda posted, "Same cop that put a gun to my brother head" and "same Cop who pulled me for my tint…followed me all the way to the Washington line"); Semiko Bennett, Facebook (Mar. 10, 2022), (in a post about Defendant Edwards, Bennett writes, "I warned Washington County NC Sheriffs office about this guy last year now look."); Semiko Bennett, Facebook (Mar. 4, 2022), (in response to a video of the assault posted by Lafare Moore, Bennett posted, "He should have been gone. I been told them this on 2/9/21. This just burns me up. Officer Aaron Edwards needs to go to prison. He is not here to serve and to protect."); Elizabeth Edwards, Facebook (Mar. 2022), (in a comment on a post about the WITN article, Elizabeth Edwards wrote, "I am not sure why he was hired with the county anyway! He was previously a state trooper and was let go after 'extremely questionable behavior.' Although this was years before being hired in Washington County…you think they would have seen it and thought twice about giving him a position of power again.").

211.     On information and belief, Defendant Phelps was previously employed by WCSO but terminated his employment at WCSO because of misconduct like the assaults on Ms. Moore and Mr. Thomas.

212.     On information and belief, Defendant Phelps reported other deputies for misconduct, but WCSO leadership failed to investigate or take corrective action against those deputies.

213.     On information and belief, members of the community posted on social media about issues they had with other WCSO deputies prior to Defendant Edwards's assault on Plaintiffs.

214.     After Deputy Franks assaulted Mr. Castaneda, community members called for a fair investigation into the misconduct and for Franks to be fired from WCSO, and questioned why Franks was hired by WCSO after being fired from another law enforcement agency.[12] Community members questioned Defendant Sheriff Barnes's assessment of Mr. Castaneda's assault and decision to not discipline Deputy Franks.[13]

### WCSO's Policy and Practice of Deficient Training on Use of Force

---

[12] Twymon Arnold, Facebook (Aug. 11, 2020), https://www.facebook.com/twymon.arnold.9/posts/pfbid0LL2njnbS6Ua9itsL5pfk53suE2QjVsM7WGsn9KRsNKJu5w5yc1GpX7U4MURkUEWCl; Twymon Arnold, Facebook (Aug. 7, 2020), https://www.facebook.com/twymon.arnold.9/posts/pfbid0LPxqxKQRMj9rcujyRBbjineEmtwu2ReAKU8D75Drrt6TFnrKp8sPi7zaXqR5va3cl; Twymon Arnold, Facebook (Aug. 7, 2020), https://www.facebook.com/twymon.arnold.9/posts/pfbid0DowqU9hg5giTS7kMm5Yk8sDPsByTFJWVxdSwQLt3EgRU4sgn1m6KmNLkPLsNawsHl.
[13] See, e.g., Twymon Arnold, Facebook (Aug. 12, 2020), https://www.facebook.com/twymon.arnold.9/posts/pfbid032Ejop7JVTX2CBJ7Bbqm2aoM5Mqi5n5r3isnLXsWVbrvdZ6wMzD7nfJqfL8BW5n4ol; Twymon Arnold, Facebook (Aug. 12, 2020), https://www.facebook.com/twymon.arnold.9/posts/pfbid02m4qGZDQKakJnCWh64Dqr2xXEa5x9uCvUd9bQmvnmwL4yVcTP4VYUiVy5biwAQbqal; Twymon Arnold, Facebook (Aug. 12, 2020), https://www.facebook.com/twymon.arnold.9/posts/pfbid036ej97AQDZHB4KLJ5ormpBQ2FGGuPGHw31dtq1WnU3RuuaJ8hbw8JLFaUgBC8onhEl.

215.     The North Carolina Sheriffs' Education and Training Standards Commission is responsible for the certification of all deputies and oversees all training courses.

216.     Deputies are required to complete Basic Law Enforcement Training ("BLET") and Annual In-Service Training for Law Enforcement[14] or can challenge the BLET state exam without taking any courses.

217.     On information and belief, WCSO regularly hires officers who have not completed the requisite BLET training to attain certification.

218.     For example, one WCSO job posting for a deputy sheriff position lists "BLET Certified" as a minimum qualification,[15] while past job postings for the same position stated applicants need only be "close to completing BLET."[16]

219.     Part of WCSO's policy and procedure for onboarding new deputies consists of training officers supervising and observing new deputies for 12 weeks. However, due to staffing constraints, new deputies are not always partnered with training officers for that amount of time.

220.     On information and belief, at the time of the incident, Defendant Mizelle had not completed any training on the use of force since 2001.

---

[14] North Carolina Department of Justice, Law Enforcement Training & Standards, Sheriffs' Education & Training Standards Division, Training Requirements, https://ncdoj.gov/law-enforcement-training/sheriffs/training-requirements/.
[15] Washington County NC Sheriffs Office, Facebook (Apr. 19, 2023), https://www.facebook.com/permalink.php?story_fbid=pfbid02XM1K1KTbNPKY1eJMpmuCgufiNkg9oz1oJmLj5NxRA1CYuy3MEKw5wAkS3JcBnq78l&id=100068807126360.
[16] Washington County NC Sheriffs Office, Facebook (Jan. 30, 2023), https://www.facebook.com/permalink.php?story_fbid=pfbid0RcToGeq7kbLv9LDpWt1aroHX67F1dY3gvtAZkv2hiscc3UieTVvHGmTc4u2Sy3ucl&id=100068807126360; Washington County NC Sheriffs Office, Facebook (June 21, 2021), https://www.facebook.com/permalink.php?story_fbid=pfbid02h19Nr38kp97nCE3AcstoCY1L5rVwiEsefQbk2TtCE4rTFgRPUv3ZUv7nT3hpeY4cl&id=491080614364965; Washington County NC Sheriffs Office, Facebook (June 7, 2021), https://www.facebook.com/permalink.php?story_fbid=pfbid0vH5ReqGwQuF2r4unN9fQoLJyr9dMCHDEtiy8WYBMB2XYpw3fm4zYNaXVNB1HjUXjl&id=491080614364965.

221.     On information and belief, at the time of the incident, Defendant Edwards had not received any training on the use of force since 2003.

222.     WCSO has failed to update its training after prior use of force incidents.

223.     WCSO does not provide its deputies with any guidance or training on the use of force after they are hired.

224.     On information and belief, shortly after he was hired, Defendant Edwards requested guidance on WCSO's use-of-force policies from Sergeant Patterson but did not receive a copy.

225.     WCSO does not provide its deputies with a use-of-force continuum.

226.     On information and belief, WCSO does not provide deputies with adequate training on de-escalation techniques.

227.     WCSO does not instruct its deputies on what degree of force should be used when executing an arrest, causing confusion.

228.     WCSO leadership does not have a shared understanding of the appropriate use of force that should be used.

229.     For instance, on information and belief, on March 4, 2022, Corporal Archie Quintana stated that Defendant Edwards had used appropriate force against Ms. Moore and Mr. Thomas. Yet, days later, Defendant Sheriff Johnny Barnes publicly stated the very opposite: Defendant Edwards's use of force "went beyond the scope of acceptable force."[17]

***Defendants Mizelle, Phelps, and White's Failure to Intervene***

---

[17] Washington County NC Sheriffs Office, Facebook (Mar. 10, 2022), https://www.facebook.com/permalink.php?story_fbid=271306248506277&id=100068807126360&ref=embed_post.

230. Defendant Mizelle not only assisted Defendant Edwards in dragging Mr. Thomas across the parking lot and used excessive force against Mr. Thomas, but he did nothing and said nothing to stop Defendant Edwards from using unnecessary force against a handcuffed Mr. Thomas.

231. Defendant Mizelle was present throughout the entirety of Defendant Edwards's interactions with Mr. Thomas and Ms. Moore, both outside and inside of the courthouse, but did not intervene in any of the many instances of Defendant Edwards's uses of force against Mr. Thomas and Ms. Moore that he witnessed despite being asked several times by Mr. Thomas if he was going to help.

232. Upon arriving at the courthouse, Defendants Phelps and White observed Defendant Edwards dragging Mr. Thomas inside of the building, and even though Mr. Thomas was not resisting, neither of them took steps to stop Defendant Edwards.

233. Defendants Phelps and White observed Defendant Edwards grabbing Ms. Moore from the courthouse steps and bringing her inside.

234. Defendant Phelps was present for Defendant Edwards's interactions with Mr. Thomas once he was inside of the courthouse but did not intervene in any of the multiple instances of Defendant Edwards's uses of force against Mr. Thomas that he witnessed.

235. Defendant Phelps watched Defendant Edwards drag Mr. Thomas onto the elevator, kneel on Mr. Thomas's legs during the elevator ride upstairs to the jail, drag Mr. Thomas out of the elevator by his leg, and leg sweep Mr. Thomas.

236. Defendant White was present as Defendant Edwards dragged Mr. Thomas into the elevator and used a leg sweep maneuver to throw him down on the floor, but did

not intervene in either of these instances of Defendant Edwards's uses of force against Mr. Thomas that he witnessed.

237.    Defendants Phelps and White refused to intervene despite Mr. Thomas's family members repeatedly asking them for help, Mr. Thomas's requests to Defendant Phelps for help, and Ms. Moore telling Defendant White that she had been punched in the mouth by Defendant Edwards.

### *WCSO's Policy and Practice of Deficient Training on Intervention*

238.    WCSO has failed to provide training to deputies on intervention and reporting use of force.

239.    On information and belief, at the time of the incident, Defendant Mizelle had not completed any training on the subject of intervention since 2001.

240.    On information and belief, at the time of the incident, Defendant Mizelle had not completed any training on how to recognize excessive force or report excessive force to a supervisor.

### *PPD's Policy and Practice of Deficient Training on Intervention*

241.    PPD has a custom and practice of officers not intervening to stop WCSO deputies from using force.

242.    On information and belief, during Defendant Edwards's February 2021 assault of Edwin Sanders, for example, a PPD officer stood by and watched as Defendant Edwards used unnecessary martial arts maneuvers on Mr. Sanders before tasing him.

243.    On information and belief, Defendant Phelps would leave the scene and directed his PPD subordinates to leave with him when he observed WCSO deputies engage in misconduct.

244.     On information and belief, Defendant Phelps left the scene and directed his PPD subordinates to leave the scene when he observed WCSO Deputy Archie Quintana violating Jasper Roscoe's rights.

245.     In some cases, PPD officers assist WCSO deputies in their use of force. For example, a PPD officer was seen on video helping Deputy Franks hold Mr. Castaneda down on the ground after Franks forcibly took him down.[18]

246.     On information and belief, PPD does not provide any training to its officers on intervention and reporting use of force.

### *WCSO's Policy and Practice of Deficient Supervision and Discipline*

247.     WCSO does not meaningfully investigate excessive force incidents or take disciplinary action against deputies who use excessive force.

248.     On information and belief, WCSO refuses to investigate complaints submitted by "concerned citizens."

249.     WCSO failed to take disciplinary action against Defendant Mizelle for his use of force and failure to intervene in Defendant Edwards's use of force.

250.     WCSO has failed to take disciplinary action in response to use-of-force incidents that occurred prior to Plaintiffs' assault. For example, Deputy Franks was cleared by WCSO of wrongdoing for violently throwing Mr. Castaneda, a man with an injured back, down on the ground.[19] During the internal investigation, Franks was even permitted to remain on duty.[20]

---

[18] Matt Debnam, *Former Beaufort County deputy subject of internal investigation in Washington County*, Washington Daily News (Aug. 12, 2020), https://www.thewashingtondailynews.com/2020/08/12/former-beaufort-county-deputy-subject-of-internal-investigation-in-washington-county/.
[19] Lake, *supra* note 9.
[20] Debnam, *supra* note 18.

251.	WCSO has failed to take disciplinary action against Defendant Edwards's for his prior uses of force. See ¶¶ 194-209 above.

252.	WCSO has also failed to take disciplinary action against Defendant Edwards's for out-of-jurisdiction stops. For instance, Defendant Edwards stopped Mr. Sanders in Martin County in February 2021. When Mr. Sanders reported it to the WCSO, no corrective action was taken against Defendant Edwards.

### *WCSO's Failure to Screen Defendant Edwards Prior to Hiring*

253.	On information and belief, Defendant Edwards engaged in misconduct in his past employment, including while serving as a law enforcement officer at other agencies prior to being hired at WCSO.

254.	Prior to 2004, while working as a stocker at Office Depot, Defendant Edwards chased and detained suspected shoplifters on several occasions.

255.	Defendant Edwards was denied employment with the Greenville Police Department in Greenville, North Carolina in or around July 2004.

256.	In 2004, while working as a police officer with the Williamston Police Department in Williamston, North Carolina, Defendant Edwards used force during an arrest by striking an individual with an ASP baton.

257.	Defendant Edwards's employment with the Williamston Police Department began on September 1, 2004 and ended on November 7, 2005.

258.	Defendant Edwards's employment with the North Carolina State Highway Patrol began on September 15, 2005 and ended on September 1, 2010.

259.     On information and belief, it was widely believed in the community in Washington County that Defendant Edwards had been fired from the North Carolina State Highway Patrol for using excessive force.

260.     On October 3, 2012, Defendant Edwards applied to be certified at the Aurora Police Department in Aurora, North Carolina but was not certified.

261.     On August 3, 2020, Defendant Edwards was certified by WCSO.

262.     Defendant Barnes was aware of the information provided in Defendant Edwards's background investigation prior to hiring Edwards as a deputy at WCSO.

263.     Defendant Barnes knew, or should have known, of Defendant Edwards's past misconduct prior to his hiring.

### *WCSO's Policy and Practice of Deficient Hiring*

264.     WCSO has a history of failing to adequately screen candidates for hire.

265.     For example, Deputy Franks had been fired from the Beaufort County Sheriff's Office in 2019 for "poor performance, bizarre and unstable behavior, and fabricated allegations" but was hired by WCSO anyway.[21] Deputy Franks then went on to use excessive force on an individual with an injured back.[22]

266.     Upon information and belief, WCSO hired and retained officers who had engaged in misconduct at other law enforcement agencies and who, through a reasonable inquiry, could have been determined to have a history of complaints.

267.     On information and belief, WCSO has hired officers who have been terminated from other law enforcement agencies for misconduct.

---

[21] *Id.*
[22] *Id.*

## CAUSES OF ACTION

### COUNT 1
### 42 U.S.C. § 1983 – FOURTH AMENDMENT – Use of Excessive Force
### (Plaintiff Thomas against Defendants Edwards and Mizelle)

268.    The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

269.    By the actions and omissions described above, done under the color of state law, Defendants Edwards and Mizelle violated 42 U.S.C. §1983 by depriving Plaintiff of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution:

   a.   The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;

   b.   The right to be free from excessive and unreasonable force in the course of search or seizure as secured by the Fourth and Fourteenth Amendments;

   c.   The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking deadly and/or excessive force as secured by the Fourteenth Amendment;

   d.   The right to be free from malicious prosecution as secured by the Fifth and Fourteenth Amendments;

   e.   The right to be free from deprivation of liberty and injury without substantive due process and free from state created danger as secured by the Fourteenth Amendment; and

   f.   In such other particulars as may be learned through discovery.

270.     Mr. Thomas had a right to be free from excessive force under the Fourth Amendment, which requires that any force used against a person at liberty be objectively reasonable under the totality of the circumstances.

271.     Defendants Edwards and Mizelle deprived Mr. Thomas of his right against excessive force under the Fourth Amendment. Defendants are sued in their individual capacities.

272.     Defendant Edwards threw Mr. Thomas to the ground at least twice, laid on top of him while he was lying face-down on the ground, dragged him across a parking lot at least twice, used a maneuver to trip him and throw him down a set of stairs, kneed him in the back of the head and neck (causing him to hit his head on the brick exterior of a building), dragged him across the floor at least three times, kneeled on his legs while he was in the elevator, and used a maneuver to leg sweep him and drop him to the floor, all while Mr. Thomas was unarmed and handcuffed.

273.     Defendant Mizelle forcefully held Mr. Thomas down on the ground, helped Defendant Edwards drag Mr. Thomas across the parking lot, kneeled on Mr. Thomas's back while Mr. Thomas was on his stomach, and forcefully pulled up on his handcuffs, all while Mr. Thomas was unarmed and handcuffed.

274.     There was no factual or legal basis for Defendants Edwards and Mizelle to use the force described against Mr. Thomas.

275.     Mr. Thomas was handcuffed behind his back at all times when Defendants Edwards and Mizelle used force against him.

276.      Mr. Thomas did not pose any threat to the safety of the officers, himself, or anyone else; he did not actively resist; he was suspected of only minor, non-violent offenses; and he did not attempt to flee or escape.

277.      Defendants Edwards and Mizelle's use of excessive force was objectively unreasonable, unnecessary, gratuitous, and punitive.

278.      As a direct result of Defendants Edwards and Mizelle's use of excessive force, Mr. Thomas experienced conscious pain and suffering and emotional and psychological distress.

279.      Accordingly, Defendants Edwards and Mizelle violated Mr. Thomas's Fourth Amendment right to be free from excessive force.

280.      Defendant Edwards's law enforcement wrongful act caused Mr. Thomas damages in an amount exceeding two million dollars.

281.      Defendant Mizelle's law enforcement wrongful act caused Mr. Thomas damages in an amount exceeding two million dollars.

282.      The conduct of Defendants Edwards and Mizelle in their individual capacities entitles Plaintiff Thomas to punitive damages and penalties allowable under 42 U.S.C. §1983.

283.      Plaintiff Thomas is entitled to reasonable costs and attorney fees pursuant to 42 U.S.C. §1988.

**COUNT 2**
**42 U.S.C. § 1983 – FOURTH AMENDMENT – Use of Excessive Force**
**(Plaintiff Moore against Defendant Edwards)**

284.      The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

285.    Ms. Moore had a right to be free from excessive force under the Fourth Amendment, which requires that any force used against a person at liberty be objectively reasonable under the totality of the circumstances.

286.    Defendant Edwards deprived Ms. Moore of her right against excessive force under the Fourth Amendment. Defendant is sued in his individual capacity.

287.    Defendant Edwards punched Ms. Moore in the mouth with a closed fist, roughly pulled her by her arm, threw her to the ground, swung her around by her arm, slammed her to the ground when she was already on her knees, forcefully handcuffed her, and pulled her by her neck.

288.    There was no factual or legal basis for Defendant Edwards to use the force described against Ms. Moore.

289.    Ms. Moore had not committed any crime, nor was there any reason to believe she had committed a crime, yet Defendant Edwards arrested her without warning or providing any prior command for compliance.

290.    Ms. Moore did not pose any threat to the safety of the officers, herself, or anyone else; she did not resist; she was not suspected of any crime; and she did not attempt to flee or escape.

291.    Defendant Edwards's use of excessive force was objectively unreasonable, unnecessary, gratuitous, and punitive.

292.    As a direct result of Defendant Edwards's use of excessive force, Ms. Moore experienced conscious pain and suffering and severe emotional and psychological distress.

293.     Accordingly, Defendant Edwards violated Ms. Moore's Fourth Amendment right to be free from excessive force.

294.     Defendant Edwards's law enforcement wrongful acts have caused Plaintiff Moore damages in an amount exceeding two million dollars.

295.     The conduct of Defendant Edwards in his individual capacity entitles Plaintiff Moore to punitive damages and penalties allowable under 42 U.S.C. §1983.

296.     Plaintiff Moore is entitled to reasonable costs and attorney fees pursuant to 42 U.S.C. §1988.

**COUNT 3**
**42 U.S.C. § 1983 – FOURTH AMENDMENT – Use of Excessive Force**
**(Both Plaintiffs against Defendant Sheriff Barnes)**

297.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

298.     The violations of Mr. Thomas and Ms. Moore's constitutional rights alleged in the above counts were committed by Defendants Edwards and Mizelle while they were acting on behalf of WCSO and Sheriff Barnes, pursuant to the customs, practices, policies, and/or procedures of WCSO.

299.     Defendant Sheriff Barnes is liable for the violations of Mr. Thomas and Ms. Moore's constitutional rights because he implemented, maintained, and enforced the customs, practices, policies, or procedures that directed, encouraged, or permitted the individual defendants to use excessive force against individuals under arrest.

300.     Defendant Barnes failed to train deputies on use of force, failed to supervise deputies, and failed to discipline deputies who use force, creating a widespread custom and practice of use of force within the WCSO. See ¶¶ 201-214 above.

301.     Defendant Sheriff Barnes knew that WCSO's customs, practices, policies, and procedures constituted excessive force.

302.     WCSO's use of excessive force was a persistent, widespread practice of Defendant Sheriff Barnes's office and was so common and well-settled that it fairly represents Defendant Barnes's policy.

303.     Defendant Sheriff Barnes was deliberately indifferent about the customs, practices, policies, and procedures.

304.     As a result of the customs, practices, policies, or procedures that directed, encouraged, or permitted the individual defendants to use excessive force, the individual defendants used excessive force on Mr. Thomas and Ms. Moore, causing conscious pain and suffering and lasting emotional and psychological trauma.

305.     The customs, practices, policies, and procedures were the moving force that led to the violation of Plaintiffs' constitutional rights.

306.     Accordingly, Defendant Sheriff Barnes is liable for the violation of Mr. Thomas and Ms. Moore's Fourth Amendment rights to be free from excessive force.

307.     Defendant Sheriff Barnes caused Mr. Thomas damages in excess of two million dollars.

308.     Defendant Sheriff Barnes caused Ms. Moore damages in excess of two million dollars.

## COUNT 4
## 42 U.S.C. § 1983 – FOURTH AMENDMENT – Failure to Intervene
### (Both Plaintiffs against Defendant Mizelle)

309.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

310.     Defendant Mizelle failed to act to intervene when he saw Defendant Edwards use excessive force against Mr. Thomas and Ms. Moore in violation of the Fourth Amendment. Defendant is sued in his individual capacity.

311.     Defendant Mizelle witnessed Defendant Edwards use force against Mr. Thomas and Ms. Moore on multiple occasions but failed to intervene.

312.     Defendant Mizelle saw Defendant Edwards throw Mr. Thomas onto the ground in the parking lot and use a maneuver to trip Mr. Thomas before throwing him down the front steps of the courthouse and kneeing him in the back of the head and neck, all while Mr. Thomas was handcuffed.

313.     Both in the parking lot and inside of the building, Defendant Mizelle saw Defendant Edwards drag Mr. Thomas.

314.     In the parking lot, Defendant Mizelle assisted Defendant Edwards in dragging Mr. Thomas from near Defendant Edwards's vehicle towards the entrance of the courthouse.

315.     Defendant Mizelle saw Defendant Edwards punch Ms. Moore in the face with a closed fist, grab her by the arm, use a maneuver to throw her to the ground, pull her around by her arm, slam her on the ground again, forcefully handcuff her, and pull her by the neck.

316.     Upstairs, on the third floor of the building, Defendant Mizelle saw Defendant Edwards leg sweep Mr. Thomas while he was still handcuffed, throwing him to the floor.

317.     Defendant Mizelle had ample opportunity to intervene in Defendant Edwards's multiple instances of excessive force against Mr. Thomas and Ms. Moore,

but instead stood by and watched as Edwards threw, kneed, kneeled on, leg swept, struck, pushed, and pulled Plaintiffs.

318.     Defendant Mizelle ignored his duty to act and failed to intervene.

319.     Defendant Mizelle did not do anything to render aid to Plaintiffs after witnessing Defendant Edwards's uses of force besides take Ms. Moore to rinse blood out of her mouth after she was punched in the face by Defendant Edwards and check Mr. Thomas and Ms. Moore's handcuffs.

320.     As a direct result of Defendant Mizelle's failure to intervene against Defendant Edwards's use of excessive force, Mr. Thomas and Ms. Moore experienced conscious pain and suffering and emotional and psychological distress.

321.     Accordingly, Defendant Mizelle is liable as a bystander to Defendant Edwards's violation of Mr. Thomas and Ms. Moore's Fourth Amendment rights.

322.     Defendant Mizelle's law enforcement wrongful act caused Plaintiffs damages in an amount exceeding four million dollars.

**COUNT 5**
**42 U.S.C. § 1983 – FOURTH AMENDMENT – Failure to Intervene**
**(Both Plaintiffs against Defendant Sheriff Barnes)**

323.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

324.     The violations of Mr. Thomas and Ms. Moore's constitutional rights alleged in the above counts were committed by Defendant Mizelle while he was acting on behalf of WCSO and Sheriff Barnes, pursuant to the customs, practices, policies, and/or procedures of WCSO.

325.     Defendant Sheriff Barnes is liable for the violations of Mr. Thomas and Ms. Moore's constitutional rights because he implemented, maintained, and enforced the customs, practices, policies, or procedures that directed, encouraged, or permitted Defendant Mizelle to assist, and refrain from intervening, in uses of excessive force against individuals under arrest.

326.     Defendant Barnes failed to train deputies on intervention, failed to supervise deputies, and failed to discipline officers who fail to intervene, creating a widespread custom and practice of ignoring misconduct. See ¶¶ 238-240 above.

327.     Defendant Barnes knew that WCSO's customs, practices, policies, or procedures constituted the failure of deputies to intervene in uses of excessive force.

328.     As a result of the customs, practices, policies, or procedures that directed, encouraged, or permitted Defendant Mizelle to assist, and refrain from intervening, in excessive force, Defendant Edwards used excessive force on Mr. Thomas and Ms. Moore, causing conscious pain and suffering and lasting emotional and psychological trauma.

329.     Accordingly, Defendant Sheriff Barnes is liable for the failure of Defendant Mizelle to intervene in Defendant Edwards's violation of Mr. Thomas and Ms. Moore's Fourth Amendment rights.

330.     Defendant Sheriff Barnes has caused Ms. Moore damages in excess of two million dollars.

331.     Defendant Sheriff Barnes has caused Mr. Thomas damages in excess of two million dollars.

**COUNT 6**

### 42 U.S.C. § 1983 – FOURTH AMENDMENT – Failure to Intervene
### (Both Plaintiffs against Defendants Phelps and White)

332.    The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

333.    Defendants Phelps and White failed to act to intervene when they saw Defendant Edwards use excessive force against Mr. Thomas and Ms. Moore in violation of the Fourth Amendment. Defendants are sued in their individual capacities.

334.    Defendants Phelps and White saw Defendant Edwards roughly grab Ms. Moore from the courthouse steps and pull her inside of the courthouse while she was handcuffed.

335.    Defendants Phelps and White saw Defendant Edwards drag Mr. Thomas to the elevator and throw him into the elevator.

336.    Defendant Phelps stood next to Defendant Edward as he kneeled on Mr. Thomas's legs on the floor of the elevator and watched him drag Mr. Thomas out of the elevator.

337.    Defendant Phelps observed Defendant Edwards leg sweep Mr. Thomas and throw him to the floor outside of the jail while Mr. Thomas was still handcuffed.

338.    Defendant Phelps knew Defendant Edwards was using excessive force but he did not do or say anything to stop him.

339.    Defendant White went back downstairs after riding the elevator up to the jail and witnessing Defendant Edwards leg sweep Mr. Thomas and throw him to the floor.

340.     On information and belief, Defendant White left because he did not want to be involved in Defendant Edwards's uses of force.

341.     Defendants Phelps and White had ample opportunity to intervene in Defendant Edwards's use of excessive force shortly after they arrived on the scene, but instead Defendants Phelps and White stood by and watched as Defendant Edwards used force on Mr. Thomas multiple times.

342.     As a direct result of Defendants Phelps and White's failure to intervene against Defendant Edwards's use of excessive force, Mr. Thomas experienced conscious pain and suffering.

343.     Accordingly, Defendants Phelps and White are liable as bystanders to Defendant Edwards's violation of Mr. Thomas's Fourth Amendment rights.

344.     Defendants Phelps and White caused Plaintiffs damages in excess of the Town's self-insured retention policy limits.

345.     Defendants Phelps and White caused Plaintiffs damages in excess of the Town's law enforcement liability insurance policy limits.

**COUNT 7**
**42 U.S.C. § 1983 – FOURTH AMENDMENT – Failure to Intervene**
**(Both Plaintiff against Defendants Plymouth and Chief Williams)**

346.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

347.     The violations of Mr. Thomas and Ms. Moore's constitutional rights alleged in the above count were committed by Defendants Phelps and White while they were acting on behalf of PPD and Chief Williams, pursuant to the customs, practices, policies, and/or procedures of PPD.

348.     Defendants Plymouth and Chief Williams are liable for the violations of Mr. Thomas and Ms. Moore's constitutional rights because they implemented, maintained, and enforced the customs, practices, policies, or procedures that directed, encouraged, or permitted Defendants Phelps and White to refrain from intervening in uses of excessive force against individuals under arrest.

349.     On information and belief, after witnessing Defendant Edwards use excessive force on Ms. Moore on the courthouse steps and on Mr. Thomas multiple times inside of the courthouse, Defendant Phelps called Defendant Williams, Chief of PPD, to inform him of the use of force.

350.     On information and belief, Defendant Phelps sought guidance on the extent to which he was supposed to intervene in the use of force and was instructed by Defendant Williams to leave the scene immediately.

351.     On information and belief, Defendant Phelps has previously observed misconduct by Washington County Sheriff's Deputies and refused to intervene, instead opting to leave the scene.

352.     Defendants Plymouth and Defendant Chief Williams knew that their customs, practices, policies, or procedures constituted the failure of officers to intervene in uses of excessive force, including when committed by Washington County Sheriff's Deputies.

353.     Defendant Chief Williams's instruction to Defendant Phelps to leave the scene after witnessing another law enforcement officer engaging in excessive force, instead of intervening, constituted a PPD policy and procedure.

354.     As a result of the customs, practices, policies, or procedures that directed, encouraged, or permitted Defendants Phelps and White to refrain from intervening in excessive force, Defendant Edwards used excessive force on Mr. Thomas, causing conscious pain and suffering.

355.     Accordingly, Defendants Plymouth and Chief Williams are liable for the failure of Defendants Phelps and White to intervene in Defendant Edwards's violation of Mr. Thomas's Fourth Amendment rights.

356.     Defendants Chief Williams and Plymouth caused Plaintiffs damages separately in excess of the Town's self-insured retention policy limits.

357.     Defendants Chief Williams and Plymouth caused Plaintiffs damages separately in excess of the Town's law enforcement liability insurance policy limits.

**COUNT 8**
**42 U.S.C. § 1983 – FOURTH AMENDMENT – Failure to Train**
**(Both Plaintiffs against Defendant Sheriff Barnes)**

358.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

359.     Defendant Barnes' failure to train deprived Plaintiffs of their rights under the Fourth Amendment.

360.     The violations of Mr. Thomas and Ms. Moore's constitutional rights alleged in the above counts were committed by Defendants Edwards and Mizelle while they were acting on behalf of WCSO and Sheriff Barnes, pursuant to the customs, practices, policies, and/or procedures of WCSO.

361.     Defendants Mizelle and Edwards acted under color of state law.

362.     The training policies of the Defendant Sheriff Barnes were not adequate to train WCSO's Sheriff Deputies to handle the usual and recurring situations with which they must deal.

363.     Defendant Sheriff Barnes was deliberately indifferent to the known or obvious consequences of WCSO's failure to train its Sheriff Deputies adequately.

364.     The failure of Defendant Sheriff Barnes to provide adequate training caused the deprivation of the Plaintiffs' rights by Defendants Edwards and Mizelle; that is, Defendant Sheriff Barnes's failure to train played a substantial part in bringing about or actually causing the injury or damage to Plaintiffs.

365.     The violations of Mr. Thomas and Ms. Moore's constitutional rights alleged in the above counts were committed by Defendants Edwards and Mizelle while they were acting on behalf of WCSO and Defendant Sheriff Barnes, pursuant to the customs, practices, policies, and/or procedures of WCSO.

366.     Defendants Barnes has a duty to ensure that the deputies working for WCSO are qualified, credentialed, and trained.

367.     Defendant Sheriff Barnes failed to properly train WCSO deputies on use of force, including when to use alternative methods of compliance instead of force, when to administer force, how to administer force, when to intervene in the use of force, and how to deploy de-escalation techniques.

368.     WCSO does not provide deputies with training on use of force, written policies on use of force, or guidance on what degree of force should be used in different situations.

369.    Defendant Sheriff Barnes failed to properly train WCSO deputies on pat downs and searching persons.

370.    Defendant Sheriff Barnes failed to properly train WCSO deputies on applying handcuffs, transporting individuals in handcuffs, and physically restraining individuals.

371.    Defendant Sheriff Barnes failed to properly train Defendant Mizelle.

372.    On information and belief, Defendant Mizelle's certification had lapsed by March 2, 2022.

373.    On information and belief, Defendant Mizelle did not begin Basic Law Enforcement Training until after March 2, 2022.

374.    On information and belief, Defendant Mizelle had not received any training from WCSO on its policies and procedures between his date of hire and March 2, 2022.

375.    On information and belief, Defendant Mizelle did not learn the restraint method he used on Mr. Thomas—jumping on his back and pulling up on his handcuffs—from any formal law enforcement training.

376.    On information and belief, Defendant Edwards did not rely on any training received from WCSO, if any was provided, when he used force on Mr. Thomas and Ms. Moore on March 2, 2022. Instead, on information and belief, Defendant Edwards relied on martial arts training.

377.    Defendant Barnes knowingly failed to provide training, or adequate training, to WCSO's deputies, including Defendants Edwards and Mizelle.

378.     Defendant Sheriff Barnes took no action to provide training despite the obvious need for training on searches, seizures, arrests and detentions, and use of force, resulting in the deprivation of individuals' constitutional rights, including those of the Plaintiffs.

379.     Accordingly, Defendant Sheriff Barnes is liable under the Fourth Amendment for his failure to train the individual defendants, resulting in Mr. Thomas and Ms. Moore's conscious pain and suffering and emotional and psychological trauma.

380.     Defendant Sheriff Barnes has caused Mr. Thomas damages in excess of applicable public officials wrongful act insurance liability limit.

381.     Defendant Sheriff Barnes has caused Ms. Moore damages in excess of applicable public officials wrongful act insurance liability limit.

**COUNT 9**
**42 U.S.C. § 1983 – FOURTH AMENDMENT – Failure to Supervise and Discipline**
**(Both Plaintiffs against Defendant Sheriff Barnes)**

382.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

383.     The violations of Mr. Thomas and Ms. Moore's constitutional rights alleged in the above counts were committed by Defendants Edwards and Mizelle while they were acting on behalf of WCSO and Sheriff Barnes, pursuant to the customs, practices, policies, and/or procedures of WCSO.

384.     Defendant Barnes failed to adequately supervise or discipline Defendant Edwards for prior use of force incidents.

385.     Defendant Barnes had actual or constructive knowledge of Defendant Edwards's past uses of force while he was employed by WCSO.

386.     There were multiple incidents in which Defendant Edwards used a questionable degree of force to conduct an arrest that should have put Defendant Barnes on notice. See ¶¶ 184-209 above.

387.     Defendant Barnes knew that Defendant Edwards's misconduct posed a threat to citizens like Plaintiffs but failed to provide adequate supervision or discipline.

388.     Defendant Barnes's inaction constitutes deliberate indifference to, or tacit authorization of, Defendant Edwards's misconduct.

389.     Defendant Barnes and his employees ignored and/or inadequately investigated complaints from the community and PPD. See ¶¶ 189-190, 195, 201-202, 205-209, 211-212 above.

390.     On information and belief, on the night of the incident, Defendant Edwards's supervisor, Chief Deputy Norman, second in command after Sheriff Barnes, ignored calls from Defendant Phelps when he tried to report Defendant Edwards's use of force.

391.     On information and belief, Chief Deputy Norman had received numerous calls about the incident and Defendant Edwards's use of force and returned Defendant Phelps' call the following day.

392.     On information and belief, the morning after the incident, Defendant Edwards casually texted WCSO Sergeant Patterson about the fight he had the night before, referring to his use of force on Mr. Thomas and Ms. Moore.

393.     Leadership at WCSO does not take complaints about misconduct seriously.

394.     On information and belief, after a former deputy reported that another deputy had broken the law on two different occasions by serving a warrant at the wrong

address and imposing a 24-hour lockdown on an individual, WCSO did not investigate or discipline the deputy after either incident.

395. Accordingly, Defendant Sheriff Barnes is liable under the Fourth Amendment for his failure to supervise and discipline Defendant Edwards, resulting in Mr. Thomas and Ms. Moore's conscious pain and suffering and lasting emotional and psychological trauma.

396. Defendant Sheriff Barnes caused Mr. Thomas damages in excess of applicable public officials wrongful act insurance liability limit.

397. Defendant Sheriff Barnes caused Ms. Moore damages in excess of applicable public officials wrongful act insurance liability limit.

**COUNT 10**
**42 U.S.C. § 1983 – FOURTH AMENDMENT – Failure to Screen**
**(Both Plaintiffs against Defendant Sheriff Barnes)**

398. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

399. The violations of Mr. Thomas and Ms. Moore's constitutional rights alleged in the above counts were committed by Defendant Edwards while he was acting on behalf of Sheriff Barnes, pursuant to the customs, practices, policies, and/or procedures of WCSO.

400. On information and belief, it was widely known in the community in Washington County that Defendant Barnes has a history of hiring officers who have been terminated from other agencies.

401.     Defendant Barnes failed to adequately scrutinize Defendant Edwards's background before hiring him. See ¶¶ 253-263 above.

402.     There were multiple instances of excessive force in Defendant Edwards's record that indicated, or should have indicated, to Defendant Barnes that hiring Defendant Edwards would result in use of force.

403.     On information and belief, it was widely believed in the community in Plymouth that Defendant Edwards had been fired from the North Carolina State Highway Patrol for using excessive force prior to being hired to work for WCSO.

404.     A thorough review of Defendant Edwards's record prior to his hiring would have revealed that he used excessive force and misconduct at his prior places of employment.

405.     Defendant Barnes should have further investigated Defendant Edwards misconduct at Office Depot, Williamston Police Department, and the state highway patrol before hiring Defendant Edwards.

406.     If Defendant Barnes had adequately screened Defendant Edwards before hiring him, Mr. Thomas and Ms. Moore's conscious pain and suffering and lasting emotional and psychological trauma, could have been avoided.

407.     Defendant Sheriff Barnes has caused Ms. Moore damages in excess of applicable public officials wrongful act insurance liability limit.

408.     Defendant Sheriff Barnes has caused Mr. Thomas damages in excess of applicable public officials wrongful act insurance liability limit.

**COUNT 11**
**Malicious Prosecution by Defendants Edwards and Mizelle**
**(Both Plaintiffs against Defendant Edwards and Mizelle)**

409.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

410.     Defendants Mizelle and Edwards instituted criminal proceedings or caused criminal proceedings to be instituted against Plaintiffs.

411.     When instituting these criminal proceedings, Defendants Mizelle and Edwards acted with express, actual and/or implied malice, and without probable cause.

412.     Defendants Mizelle and Edwards acted to unlawfully arrest Plaintiffs based on false pretenses with the intention to avoid criminal, civil or administrative consequences of their actions in the incident on March 2, 2022.

413.     Defendant Edwards provided misstatements and misleading statements to the Magistrate Judge to obtain an arrest warrant.

414.     Defendants caused criminal prosecution of Plaintiffs without probable cause or any justification whatsoever, and with personal malice and animus against Plaintiffs, and in deliberate disregard of Plaintiffs' rights to be free of an unlawful seizure and to Due Process of Law.

415.     Because of Defendants' malicious charges against Plaintiffs, Plaintiffs were detained in jail for a period of twelve hours.

416.     Because of Defendants' malicious charges, Plaintiffs' arrests were publicized by local media, to their humiliation and great emotional distress.

417.     The criminal proceedings instituted by or as a result of Defendants Mizelle and Edwards resolved in Plaintiffs' favor. Plaintiffs' criminal charges were dismissed.

418.     As a result of the wrongful acts of Defendants Mizelle and Edwards, the

Plaintiffs were wrongfully arrested and jailed.

419.     Defendants maliciously prosecuted Plaintiffs and deprived them of personal

liberty without Due Process of Law in violation of the Fourteenth Amendment and

caused Plaintiffs to be unreasonably seized and detained in violation of the Fourth and

Fourteenth Amendments to the Constitution of the United States.

420.     The Defendants are jointly and severally liable for the malicious prosecution

of Mr. Thomas by Defendants Mizelle and Edwards, which proximately caused

damages to Plaintiff in excess of $25,000.00, the exact amount to be later determined

at trial.

421.     The Defendants are jointly and severally liable for the malicious prosecution

of Ms. Moore by Defendants Mizelle and Edwards, which proximately caused

damages to Plaintiff in excess of $25,000.00, the exact amount to be later determined

at trial.

422.     Plaintiffs are entitled to punitive damages because Defendant Edwards acted

with deliberate, willful, and wanton disregard of their rights and privileges.

### COUNT 12
### False Imprisonment by Defendant Edwards
### (Plaintiff Thomas against Defendant Edwards)

423.     The preceding and foregoing paragraphs are incorporated by reference as if fully

set forth herein.

424.     Defendant Edwards individually and in his official capacity as Sheriff's Deputy

for Washington County Sheriff's Office illegally restrained Mr. Thomas.

425. Specifically, Defendant Edwards illegally stopped Mr. Thomas outside of Washington County in nearby Martin County, outside Defendant Edwards's jurisdiction. Thereafter, Defendant Edwards, by an express and/or implied use of force, illegally restrained Mr. Thomas, by restraining him inside his patrol car, through an unlawful arrest, and subsequent unlawful incarceration without legal authority or probable cause.

426. The illegal restraint of Mr. Thomas by Defendant Edwards was done against Mr. Thomas's will.

427. Defendant Edwards is liable for the false imprisonment of Mr. Thomas which proximately caused damages to Mr. Thomas in excess of $25,000.00, the exact amount to be later determined at trial.

428. To the extent, if at all, the Court finds that Defendant Edwards is entitled to immunity from the state law claim articulated above, Plaintiff brings this claim, in the alternative, under the North Carolina Constitution against Defendant Edwards in his official capacity for false arrest and false imprisonment.

429. Plaintiff seeks and is entitled to recover compensatory damages in excess of ten thousand dollars ($10,000) and appropriate equitable relief for the violations of his constitutional rights.

**COUNT 13**
**Assault and Battery by Defendants Mizelle and Edwards**
**(Both Plaintiffs against Defendants Edwards and Mizelle)**

430. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

431.    Defendants Edwards and Mizelle, in their individual and official capacities as Sheriff's Deputies for Washington County Sheriff's Office, unjustifiably used potentially deadly force against Plaintiffs, which was objectively excessive and unreasonable under the circumstances.

432.    Defendants Edwards and Mizelle's intentional acts as described more fully hereinabove, put Plaintiffs in actual, subjective apprehension of imminent harmful or offensive contact.

433.    Plaintiffs' apprehension was objectively unreasonable under the circumstances in that a person of ordinary care and prudence under the same or similar circumstances would have believed that harmful or offensive contact was about to occur.

434.    Defendants Edwards and Mizelle's intentional acts of force constituted a harmful or offensive contact with Plaintiffs.

435.    Defendants Edwards and Mizelle's actions proximately caused the harmful or offensive contact with Plaintiffs.

436.    Plaintiffs did not consent to the contact with, from or by Defendants Edwards and Mizelle.

437.    The Defendants are jointly and severally liable for the malicious assault and battery of Plaintiffs by Defendants Edwards and Mizelle for damages in excess of $25,000.00, the exact amount to be later determined at trial.

## COUNT 14
### Common Law Malicious Prosecution
### (Both Plaintiffs against Defendant Edwards)

438.    The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

439.     Defendant Edwards initiated criminal proceedings against Plaintiffs.

440.     The acts of Defendant Edwards in doing so was committed with such reckless and wanton disregard for the Plaintiffs that they were malicious, corrupt and beyond the scope of their official duties as Washington County Sheriff's Office Deputy.

441.     Defendant Edwards lacked probable cause for the initiation of the criminal proceedings.

442.     The criminal proceedings were terminated in favor of Plaintiffs.

443.     Plaintiffs are entitled to recover from Defendant in an amount to be later determined at trial as a result of Defendant's acts of malice, corruption and acts outside the scope of official duties.

## COUNT 15
## Punitive Damages

444.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

445.     As a direct and proximate result of the grossly negligent, reckless, intentional and willful conduct of Defendants Edwards, Mizelle, White, and Phelps as well as their conscious disregard of the health and safety of Plaintiffs, and other members of the law abiding public as alleged herein, Plaintiffs are entitled to recover punitive and exemplary damages under both federal and state law to punish Defendants for their illegal, egregiously wrongful, reckless, willful, and/or wanton misconduct and to determine such conduct by others.

446.     Plaintiffs are entitled to recover punitive damages from Defendants, jointly and severally, in an amount to be later determined at trial.

## COUNT 16
### Suit of Sheriff's Bonds – N.C. Gen. Stat. § 162-8 & 58-76-5

447.     The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

448.     Upon information and belief, Sheriff Barnes held a surety bond.

449.     In all the actions and conduct set forth herein in all causes of action, the individually named Defendants Edwards and Mizelle were acting within the scope and course of their authority as Deputy Sheriffs and under the color of their office as Deputy Sheriffs and employees of the Washington County Sheriff's Office.

450.     The actions of each individual Defendant, in each claim for relief described herein constitute negligence, misconduct, and misbehavior done in violation of their duties as Deputy Sheriffs and employees of the Sheriff of Washington County, North Carolina.

451.     Plaintiffs suffered injuries as a result of Defendants' neglect, misconduct or misbehavior in office.

452.     Defendants' neglect in their offices and positions within the Sheriff of Washington County, was a proximate cause of injury to Plaintiffs.

453.     Sheriff Barnes' Sheriff Bond(s), as alleged hereinabove, were in full force and effect during the times complained of herein.

454.     Surety XYZ is also liable to Plaintiffs for their injuries caused by the Defendants' neglect while in office by virtue of then in-force Sheriff's Bonds, as alleged herein.

455. Plaintiffs are entitled to recover the full amount of the Sheriff's Bonds as to the claims against each Defendant according to the provisions of N.C. Gen. Stat. § 58-76-5.

456. Plaintiffs are entitled to recover on the bond all damages caused by the neglect and malfeasance of Defendant Barnes and his agents, as allowed by N.C.G.S. § 28A-28-2(b).

457. Plaintiffs may sue repeatedly on the bond until judgment is paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that after due proceedings, there be judgment rendered herein in Plaintiffs' favor and against all Defendants, individually and jointly, as follows:

a. Compensatory and punitive damages as prayed for herein;

b. Reasonable attorney's fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794(b) and all costs of these proceedings and legal interest;

c. For interest on each judgment for Plaintiffs;

d. Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute;

e. For punitive damages under state law for any actions deemed to have been committed with malice;

f. Enter a declaratory judgment, specifying Defendants' constitutional violations and declaring the rights of the Plaintiffs;

g. Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that Defendants' treatment of Plaintiffs was unconstitutional and in violation of 42 U.S.C. § 1983;

h. Declare that Defendants' acts, taken in their individual capacities, as alleged above, violate the Fourth Amendment of the U.S. Constitution;

i. Enter a permanent injunction preventing municipal Defendants from maintaining unconstitutional policies, practices, and customs related to the use of force and intervention; and

j. All other relief as appears just and proper to this Honorable Court.

THIS the 21 September 2023.

s/ Micheal L. Littlejohn Jr.
Micheal L. Littlejohn Jr.
N.C. Bar No. 49353
Littlejohn Law PLLC
PO Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com
Counsel for Plaintiff

**NATIONAL POLICE ACCOUNTABILITY PROJECT**

/s/ Lauren Bonds
Lauren Bonds*
1403 Southwest Boulevard
Kansas City, Kansas 66103
(620) 664-8584
legal.npap@nlg.org

Keisha James*
PO Box 56386
Washington, DC 20040
(202) 557-9791

keisha.npap@nlg.org

Eliana Machefsky*
2111 San Pablo Avenue
PO Box 2938
Berkeley, CA 94702
(314) 440-3505
fellow.npap@nlg.org


*pro hac vice admission pending